OUTHWITE v. PORTER.

---

### John R. Outhwite v. Lewis Porter, William W. Cantine and Aaron B. Miner.

*Injunction, — Bill to restrain the collection of notes. —* A and B being engaged in mercantile business together, the former purchased the interest of the latter, and in consideration thereof, and in payment of a debt of B to C, gave his notes to C, who accepted them in lieu of B's notes, which he gave up. Before A's notes became due, he discovered that B had defrauded him in the sale, and he notified C of the fact, and that he should not pay the notes. There was no evidence that C was a party to or had knowledge of the fraud; — *Held,* That A was not entitled to a decree restraining C from the collection of said notes.

*Negotiable paper — Holder for value. —* A person taking negotiable paper before due from the payee for a precedent debt, is a holder for value, and such paper in his hands is not subject to the equities existing between antecedent parties. — *Bostwick v. Dodge,* 1 Doug. 413.

*Defendant not served with process — void decree against, will be set aside, though he does not appear. —* Where in a Chancery appeal it appeared that one of the defendants who did not appeal was never served with process, and did not appear in the cause in the Court below, but that the bill was taken as confessed against him upon publication, and the decree against him by the Court below, was for the payment of fourteen hundred dollars; — *Held,* That the Court never acquired jurisdiction of said defendant so as to affect him by such decree, and, although he had not appealed, the decree, being void as to him, would be set aside.

*Heard October 24 and 25. Decided October 31.*

Appeal in Chancery from Muskegon Circuit.

The facts, so far as they are necessary to an under-standing of the legal questions, are stated in the opinion.

*Moore & Griffin* for complainant:

1. Porter did not give value for Outhwite's promise to pay, either by way of harm to himself, or benefit to Outhwite. What he received from Outhwite was a mere promise to pay Cantine's debt, not yet due, at the same time and place, and for the same amount; that which Porter parted with was not a security for Cantine's debt, but mere evidence of its existence. The debt still remained as effective and effectual from Cantine to Porter as if the notes had not been surrendered.

If Porter has not discharged his debt against Cantine, so that he has no right to sue Cantine for the goods sold, he cannot be considered a *bona fide* holder for value, within the purview of the law merchant, which he invokes to his aid.

On this subject we have eliminated a large number of cases, and present only those which are the more thoroughly considered, and bear on the particular features of this case.

We cite the New York authorities in the order in which the cases have been decided. — *Coddington v. Bay*, 20 *John.*, 637; *Wardell v. Howell*, 9 *Wend.*, 86; *Rosa v. Brotherson*, 10 *Wend.*, 86; *Ontario Bank v. Worthington*, 12 *Wend.*, 593; *Payne v. Cutler*, 13 *Wend.*, 605; *Francis v. Joseph*, 3 *Edw. Ch.*, 182; *Furniss v. Gilchrist, et. al.*, 1 *Sandf.*, 53; *Stewart v. Small, et al.*, 2 *Barb.*, 561; *Farmington v. Frankfort Bank*, 24 *Barb.*, 554; *Cardwell v. Hicks*, 37 *Barb.*, 458.

Citing and approving New York cases, see *Nevitt v. Bank of Port Gibson*, 1 *Freeman's Ch.*, 438; *Hugenin v. Basely*, 14 *Vesey, Jr., Ch.*, 287.

There can be no pretense that Porter has been

injured by the laches of Outhwite, or by the confidence that Outhwite reposed in Cantine, so that thereby Porter has been induced to give credit, or delay in prosecution of his remedy against Cantine; for he was notified of the fraud, and of Outhwite's election to rescind his agreement with Cantine before maturity of Cantine's notes, and before Porter had a right to sue Cantine for the debt.

Thus, in no aspect of the case has Porter been injured, or Outhwite benefitted, by the promise of the latter to pay Cantine's debt.

2. The decree of the Court below is erroneous, however, in two respects; and we ask the Court here, in decreeing according to the *very right of the matter*, to correct these errors.

First. It was erroneous to grant a personal decree in favor of Outhwite against Cantine, as the very fraud had been effectual, which this bill is filed to prevent.

Second. It was erroneous to refuse relief as to the notes upon which Porter had obtained judgment.

The Court below was undoubtedly led into these two errors, by giving effect to the two judgments as estoppels against questioning their equity or justice, and by not taking into consideration that other rule of law, that although a party *may* avail himself of an estoppel, yet he is not bound to do so; and if he pleads to the merits, he opens the estoppel and consents that the case be decided on its real merits. Estoppels are not favorites of law, because it is their peculiar office " to exclude the truth;" and this defendant, having joined issue upon the merits of the complainant's bill, and not having in any way insisted upon the estoppel of the judgments, but rather having relied solely upon his claim as to all the notes, indiscriminately, to come within the purview of the law merchant, has thereby opened the estoppel, and happily, thus relieved his conscience and character

from the burden of effectuating to any extent the frauds of Cantine upon Outhwite. — 1 *Chitty on Plead.,* 590 ; 311 ; *Stark on Ev., notes by Sherwood,* 311 ; *Voogt v. Winch.,* 2 *Barn. and Alderson,* 657 ; *Outram v. Morewood,* 2 *East.,* 364 ; *American Common Law,* vol. 5, 89 — 90 — 91 — 92 ; *Ferguson v. Miller,* 5 *Ohio Cond. Rep.,* 291 ; *Davis v. Tyler,* 18 *Jihn.,* 489 ; *Davoue v. Fanning,* 4 *John. Ch.,* 200 ; *Rosse v. Rust,* 4 *John. Ch.,* 555 ; *Young v. Rummell,* 2 *Hill.* 478 ; *Miller v. Maniel,* 6 *Hill,* 114.

*Hoyt Post* for defendant Porter:

1. Courts of equity will not interfere by injunction to restrain proceedings at law *after judgment,* unless special circumstances be shown ; as that the party had no adequate remedy at law, or was ignorant of such defence during the suit, or was prevented from availing himself of such defence by fraud or accident, or by the act of the opposite party unmixed with negligence or fault on his part. — *Foster v. Wood,* 6 *Johns. Ch.,* 89 ; *Wixon v. Davis, Walk. Ch.,* 15 ; *Wingate v. Haywood, N. H.,* 437 ; 2 *Storey's Eq. Juris.,* 886, *et seq.;* 2 *Lead. Cas. in Eq., part* 2, 97, *et seq.*

2. Equity will not interfere to prevent a party from pursuing a legal remedy without some showing that the proceeding will be unjust and against equity. The only foundation alledged in this suit for the interference of equity to enjoin the foreclosure of said mortgage is the pretended fraud of Porter, and collusion and connivance on his part with said Cantine to defraud complainant. Of this there is a total want of proof of any kind.

Fraud will not be inferred from slight circumstances, but the proof of it must be so clear and conclusive as to leave no rational doubt of its existence, in the mind of the Court. — *Buck v. Sherman,* 2 *Doug. Mich.,* 176 ; *Hollister v. Lord,* 2 *Mich.,* 310.

OUTHWITE v. PORTER.

As to what constitutes fraud, see 1 *Story's Eq. Juris.*, §190, *et seq.;* 2 *Kent's Com.*, 484.

We submit, then, that under all circumstances of this case there were no such equities established as justified the Court in enjoining Porter from collecting his note by foreclosing the mortgage collateral thereto.

3. Considering the transaction as a whole, Porter occupies really a position analogous to that of a *bona fide* holder of notes given by complainant to Cantine, and by Cantine transferred to him before due for a valuable consideration. In such case any fraud in Cantine in obtaining the notes does not affect the holder's rights without fraud in him or notice to him of Cantine's fraud, unless he received the notes under circumstances of such a strong and pointed character as necessarily to cast a shade upon the transaction, and put him on inquiry.

CHRISTIANCY J.:

This was a bill to restrain the collection of three promissory notes and a mortgage made by complainant to the defendant Porter, upon two of which notes judgment had been obtained:

Cantine, one of the defendants, (who was not served with process, but against whom the bill was taken as confessed upon publication,) had been a partner of complainant from the spring of 1860 down to the fall of 1861. He had had the whole management of the business, keeping the books himself—the complainant being engaged personally, most of his time, in other business, and being ignorant of book-keeping, and unable to judge of the condition of the firm from the books, and knowing little of its real condition.

In the fall of 1861, Cantine sold to complainant his interest in the firm, making his own statements of its condition, the accounts and the debts of the firm, etc.,

13 MICH.—21.

upon the correctness of which complainant relied in making the purchase.

All the purchase price was paid, except a sum equal to the amount of three promissory notes of Cantine, held by Porter, which were not yet due. These, Cantine proposed that complainant should take up by substituting his own paper, and this would pay the balance of the purchase money on the purchase of his partnership interest. This complainant was willing to do, if satisfactory to Porter. The parties called upon Porter, stating their object, who, after making certain inquiries as to the property and responsibility of complainant, agreed to take his three promissory notes and his mortgage, in lieu of Cantine's notes, and to surrender the latter. Complainant's notes and mortgage were, in pursuance of this agreement, completed and delivered to Porter a few days after, and Porter gave up to Cantine his notes. About a month after this arrangement was completed, complainant discovered that Cantine had defrauded him in the sale of his interest in the firm, by false representations of the condition of the firm; that it was owing much more than he had represented; that he had kept false accounts, had used money of the firm not accounted for, and had not paid in the amount he had represented; and complainant thereupon notified Porter of the fraud, and that he should not pay the notes. This was prior to the maturity of his notes, and before those of Cantine would have become due. The bill charges Porter with full knowledge of, and complicity in, the fraud of Cantine, by which complainant was induced to give the notes and mortgage.

Cantine's fraud is clearly established by the proof; and if the notes had been given to him, the complainant would, as against him, be clearly entitled to the relief he asks.

But there is no satisfactory evidence that Porter, at

the time of the arrangement, or the giving up of Cantine's notes, had any knowledge or intimation of the fraud by which Cantine had procured the notes to be given, though he was informed that the notes were given as a part of the purchase price of Cantine's interest in the firm. But he knew nothing, so far as the evidence shows, of the actual condition of the firm, or of Cantine's representations.

But it is insisted by complainant's counsel that, though Porter was innocent of all fraud in the transaction, he did not take the notes in the ordinary course of business, nor give value for them; that the debt of Cantine was not extinguished by giving up his notes, and that Porter might still sue Cantine on the original debt for which his notes had been given, and, therefore, that complainant's notes in Porter's hands were subject to the equities existing between complainant and Cantine; and the New York cases are cited to the effect that a person taking negotiable paper for a precedent debt is not a holder for value, and that such paper in his hands is subject to the equities existing between antecedent parties.

But the rule established by these cases was directly repudiated in this State more than twenty years ago, in *Bostwick v. Dodge*, 1 *Doug.* (*Mich.*) *R.*, 413, which established directly the contrary doctrine. This case has been uniformly recognized as law by this Court, and we are entirely satisfied with the correctness of the principle upon which it rests. The case now before the Court does not present precisely this question, though we think it rests substantially upon the same principle.

This is a case of novation, or the substitution of one debtor for another by the assent of the three parties. Porter, at the request of both complainant and Cantine, gave up the notes and extinguished the debt of the latter, in consideration of receiving complainant's notes

and mortgage in their place. Cantine gave up and extinguished his claim against complainant, in consideration of complainant's substituting his paper for that of Cantine to Porter. This, therefore, constituted a direct and original contract between complainant and Porter, founded upon a new consideration moving from Porter, the extinguishment of Cantine's debt to him; and Porter cannot be considered as taking upon himself the risk of the sufficiency of the original consideration between complainant and Cantine. That was a question between complainant and Cantine only. Porter had a right to suppose that consideration sufficient, when complainant was satisfied with it.

The decree of the Court below, making the injunction perpetual as to one of the notes, was erroneous. A personal decree was made against defendant Cantine for the payment of fourteen hundred dollars; but as he never was served with process, and never appeared in the cause, the Court below never acquired jurisdiction to affect him by such a decree. And though he has not appealed, yet the decree, being merely void as to him, should be set aside.

The decree as to both defendants must, therefore, be set aside, and the bill dismissed, with costs in both Courts to the appellant.

The other Justices concurred.