GEORGE E. BARKER, APPELLANT, V. ADOLPH C. LICHT-
ENBERGER ET AL., APPELLEES.

FILED SEPTEMBER 18, 1894.    No. 5140.

1. **Negotiable Instruments**: PURCHASERS AFTER MATURITY.
When negotiable paper is purchased after maturity from an in-
nocent holder for value before maturity, the purchaser takes it
free from all equities and defenses which existed between the
original parties to the paper. *Koehler v. Dodge*, 31 Neb., 328,
followed.

2. ———: BONA FIDE HOLDERS. It seems that one who takes the
negotiable paper of a third person in payment of a pre-existing
debt is a holder for value.

3. ———: ———. This is certainly true where by taking the note
the creditor loses or postpones his right to proceed upon the
original indebtedness.

APPEAL from the district court of Douglas county.
Heard below before DOANE, J.

*Cornish & Robertson*, for appellant, cited: *Koehler v.
Dodge*, 31 Neb., 328; *Bassett v. Avery*, 15 O. St., 299;
*Simon v. Merritt*, 33 Ia., 537; *Schawacker*, 50 Ind., 592;
*Kimey v. Kruse*, 28 Wis., 183; *Hogan v. Moore*, 48 Ga.,
156; *Peabody v. Rees*, 18 Ia., 571; *Bank of Sonoma
County v. Gove*, 63 Cal., 355.

*Edward W. Simeral* and *William Simeral*, contra, cited:
*Davis v. Neligh*, 7 Neb., 78.

IRVINE, C.

The appellant Barker brought this action to foreclose two
mortgages on the same property. One of these mortgages
was made by Alvadus H. Mayne to Barker to secure certain
notes. The property thereafter by *mesne* conveyances passed
to Lichtenberger. The decree foreclosed this mortgage, and

as to that part of it there is no controversy. The other mortgage was given by Lichtenberger to Clifton E. Mayne to secure three notes made by Lichtenberger to Mayne, each dated February 7, 1888, each for $231.50, with interest at eight per cent from date, and payable, respectively, one, two, and three years after date. The petition alleges that these notes were transferred to the plaintiff for value before maturity. The answer alleges that the notes were transferred to plaintiff by C. E. Mayne after they had become due, and then pleads a set-off against Mayne of $440.99. The decree, after awarding foreclosure of the first mortgage, finds that prior to the maturity of any of the notes secured by the second mortgage, Clifton E. Mayne sold, transferred, and delivered said notes to one Charles Corbett and that Corbett was a *bona fide* holder for value; that thereafter, and after the maturity of the first note and prior to the maturity of the other two notes, Barker purchased all of said notes from Corbett for a valuable consideration, and without any notice of any defense which Lichtenberger had on said notes in the hands of Mayne. The decree then finds in favor of Lichtenberger on his counter-claim against Mayne, ascertains the amount due on the second and third notes, awards a foreclosure of the second mortgage to the extent of those notes, and cancels the first note.

The district court seems to have proceeded upon the theory that one who receives negotiable paper after maturity takes it subject to any set-off existing against the original holder whether or not the paper was acquired from one who was a *bona fide* holder before maturity. In support of the decree of the district court counsel cite us to the case of *Davis v. Neligh*, 7 Neb., 78, where it was held that any set-off to a promissory note which would have been good between the original parties may be pleaded against an indorsee who acquires it after maturity, that such indorsee takes it subject to any right of set-off which the

maker had against any prior holder.  The court was, how-
ever, then considering a case where the paper had never
been in the hands of an innocent holder for value before
maturity, and the language referred to states the general
rule as applicable to the facts of the case under considera-
tion without referring to or deciding upon the rights of
one who purchases after maturity from one who became a
*bona fide* holder before maturity.  In *Koehler v. Dodge*,
31• Neb. 328, it was said: "It has become the settled law
of this country that where a negotiable note is purchased•
after due from an innocent holder, the purchaser takes the
title of and is entitled to the same protection as his in-
dorser."  The rule so stated is in accordance with the es-
tablished principles of the law merchant, and is adhered
to.  The district court, therefore, erred in holding that
Barker, having purchased the first note after its maturity
from one who was an innocent holder before maturity,
could not recover because of the set-off against the payee.
The uncontradicted evidence discloses that Corbett took
the notes from Mayne in payment of an indebtedness from
Mayne to Corbett, and that Barker took the notes from
Corbett in payment of an indebtedness from Corbett to
Barker.  Counsel now urge that a pre-existing debt is not
sufficient consideration to protect the purchaser of notes
against outstanding equities.  Upon this general question
there has been a marked conflict in the authorities and
courts have indulged in most refined distinctions.  We
shall not attempt a review of the numerous cases.  It is
sufficient to say that since the case of *Swift v. Tyson*, 16
Pet. [U. S.], 1, we think the decided tendency of the cases
has been in the direction of protecting such holders against
equities where their situation has been in any manner al-
tered to their disadvantage.  The necessity for greater uni-
formity in the law relating to negotiable instruments has
become so evident that systematic efforts by the organized
bar of the country have, for some years, been made towards

52

accomplishing that object. The mere numerical preponderance of recent authorities is, therefore, entitled to great weight in considering cases relating to commercial paper. Certainly, in this case, where Corbett accepted these notes before their maturity in payment of the former holder's indebtedness, he was entitled to protection. The notes were held by him not as security merely but in payment, and at least until the notes matured his remedy against his indorser on the original indebtedness was suspended. According to any reasonable view he must be considered a holder for value.

The decree of the district court is reversed and a decree entered here similar to the former decree, but omitting that portion canceling the first note, and adding to the amount found due upon the second mortgage the amount of such first note, together with interest to May 11, 1891, the date to which interest was computed in the decree. This amount we compute to be $291.89.

DECREE ACCORDINGLY.