IOWA NAT. BANK OF OTTUMWA v. SHERMAN & BRATAGER.

1.  The president of a corporation for manufacturing and selling machinery, which, in the usual course of business, receives promissory notes. is presumed to be authorized to transfer its notes,

2.  Authority of a bank teller to accept and discount a note for a particular person is shown by the fact that the teller was accustomed to accept and discount notes for persons doing business with the bank, and had often, in the absence of the cashier, accepted and discounted other notes for such person, and that these transactions had been recognized and approved by the officers of the bank.

3.  That the president of a bank is a stockholder, and the cashier a stockholder and secretary, of a corporation which is the payee of a note transferred to the bank, does not charge the bank with constructive notice of defenses of the maker against the corporation payee, when neither the president nor cashier had actual notice.

4.  The application of the proceeds of a negotiable note to the credit of the transferror on an existing debt is a sufficient consideration to constitute

the transferree a bona fide holder, and protect him against defenses of which he had no notice.

(Opinion filed Nov. 11, 1903)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge.

Action by Iowa National Bank of Ottumwa against Sherman & Bratager on a promissory note. From a judgment for plaintiff, defendants appeal. Affirmed.

*Joe Kirby,* for appellants.

The power to endorse and transfer negotiable paper is not one of the implied powers of a president of a manufacturing corporation Blood v. Marcus. 38 Cal., 590; McCullough v. Moss, 5 Denio, 568; Western National Bank v. Armstrong 152 U. S., 346; Park Hotel Co. v. Bank, 86 Fed., 745; First National Bank v. Michigan City Bank, 80 N. W. (N. D.) 766; Morris v. Griffin, Etc. Co., 69 Fed., 135; Massachusetts L. & T. Co. v. Twitchell, 75 N. W. (N. D.) 786.

The teller of a national bank has no authority to purchase paper on behalf of the bank, and that his attempt to do so could at any time have been repudiated by the board of directors or their agent, ordinarily a discount committee. Mussey vs. Egal Bank 9 Met. 306.

Where corporations have officers and interests in common, such officers cannot shirk the responsibility of their positions on to some inferior, and then claim that their principal, the corporation, does not know what they know. First National Bank v. Erickson, 31 N. W. 387; Mann v. Second National Bank, 1 Pac. Rep. 579; Black Hills National Bank v. Kellog, 4 S. D. 312-16; Farmers & Traders Bank v. Milling Co., 1 S. D. 388; Wade on Notice, Sec. 681; Fulton Bank v. Canal Co., 4 Paige 127.

The endorsee of a note, who takes it in payment of a pre-existing debt, is not a bona fide holder for value. Phenix Insurance Co. v. Church, 81 N. Y. 218; Riley v. Johnson, 8 Ohio Rep. 527; Seymore v. McKinstry, 106 N. Y. 237; Farris v. Tavel, 11 S. W. 93.

*Boyce & Warren,* for respondent.

The president of a corporation for manufacturing and selling machinery, which in the usual course of business, receives promissory notes, is presumed to be authorized to transfer its notes. Merrill v. Hurley, 6 S. D. 592; Mann v. Second National Bank, 10 Pac. 150; Merchants Bank v. Citizens' Gas Light Co., 159 Mass. 505; American Exchange National Bank v. Oregon Pottery Co., 55 Fed. 265; Crowley v. Mining Co., 55 Cal. 273; Caryl v. McElrath, 3 Sanford 176; Irwin v. Bailey, 13 Fed, Cases, 114, S. C. 8 Biss. 537.

Notice, in order to charge the endorsee of negotiable paper, must be actual and not merely constructive. In all the cases cited by the defendant, the agent had actual notice. Benton v. German American National Bank, 26 S. W. 975; Wilson v. Second National Bank, 7 Atlantic 145; Ft. Dearborn National Bank v. Seymour, 73 N. W. Minn. 724; Casco National Bank v. Clark; 34 N. E. 908; Memphis National Bank v. Neely, 34 L. R. 274.

The transfer of a negotiable promissory note before maturity, in payment of a pre-existing debt, is of itself a sufficiently valuable consideration to constitute the transferee a *bona fide* holder, and to entitle him to protection against infirmities in the paper of which he has no notice. 4 Am. and Eng. Ency. of Law 2d Ed: 285-295, 298. Swift v. Tyson, 16 Pet. 1; Mann v. Second National Bank, 10 Pac. 150; Mayer v. Heidel-

bach, 123 N. Y. 332; Barker v. Lightenberger, 60 N. W. 79; Carlisle v. Wishart, 11 Ohio 173, 192; Rosemond v. Graham; 56 N. W. 38; Nagles v. Lyman, 14 Cal. 451; Outhwite v. Porter, 13 Mich. 533; Hanold v. Kays, 64 Mich. 439.

CORSON, J.   This is an appeal from a judgment entered on a directed verdict in favor of the plaintiff.   The action was brought upon a promissory note executed by the defendants to the Janney Manufacturing Company, and transferred by that company to the plaintiff.   The defendants, in their answer, set up a warranty on the part of the Janney Manufacturing Company, and claim that the machinery delivered to them was not in compliance with the warranty. It was proven on the part of the plaintiff, and uncontradicted, that before the maturity of the note in suit the same was transferred to the plaintiff bank by the president of the Janney Manufacturing Company, and discounted by the teller of the bank, and the proceeds passed to the credit of the Janney Manufacturing Company, which was indebted to the plaintiff bank in a sum exceeding $10,000; and it further appeared from a cross examination of the president and cashier of the bank that the president of the bank was a stockholder in the Janney Manufacturing Company and its treasurer, and that the cashier of the plaintiff bank was the secretary of the Janney Manufacturing Company, and also a stockholder therein.

The appellants seek a reversal of the judgment in this case upon four grounds: (1) That the president of the Janney Manufacturing Company was not authorized to transfer the note in controversy to the plaintiff bank, or at least that there was no evidence tending to show that he was authorized to make the

transfer.    (2) That there was no evidence showing or tending to show that the teller of the bank was authorized to discount the note and pass the proceeds of the same to the credit of the Janney Manufacturing Company.    (3) That the president and cashier of the plaintiff bank, being stockholders and officers of the Janney Manufacturing Company, were charged with notice of any defenses that may have existed against the note in suit in this action.    (4) That as the plaintiff bank advanced no new consideration for the note in suit, but gave the Janney Manufacturing Company credit for the proceeds, it could not defeat the rights of the defendants to make their defense to the note. The court evidently being of the opinion that the plaintiff had established by the uncontradicted evidence a transfer of the note to the plaintiff bank before maturity, excluded all evidence on the part of the defendants as to their alleged warranty and breach thereof, and, on motion of the plaintiff, directed a verdict in its favor.

It is contended by the appellants that the president of a corporation is not authorized to transfer a note belonging to such corporation by virtue of his office as president, and that a transfer by him, unless specifically authorized by the board of directors, does not have the effect to transfer the title.    It appears in this case that the Janney Manufacturing Company was engaged in the manufacture of agricultural machinery, and that much of its business was transacted by way of notes taken by it for machinery delivered, and that it was in the habit of transferring such notes to the plaintiff bank by the indorsement of the president.    The Janney Manufacturing Company being engaged in a business in which it received notes from its agents and customers, the president, in the ab-

sence of any evidence to the contrary may reasonably be presumed to be authorized to discount and transfer the notes of the company.   In Merrill v. Hurley, 6 S. D. 592, 62 N. W. 958 55 Am. St. Rep. 859, this court held, "In the absence of evidence to the contrary, it will be presumed that the managing president of a corporation engaged in loaning money and in buying and selling negotiable instruments has authority, as such, to transfer by indorsement a promissory note made payable to such corporation."   The case of Mann et al. v. Second National Bank of Springfield, Ohio, 34 Kan. 746, 10 Pac, 150, is very analogous to the case as bar.   In that case it was contended by the defendant in error that there was no such indorsement or transfer of the note as would convey any interest to the transferee (plaintiff below), and even if there was, that such indorsement or transfer was irregular, informal, and that it would not cut off outstanding equities existing in favor of the defendant below and against the original holder of the note.   It appeared from the evidence that the note was made payable to Amos Whitely, president, and was by him indorsed and transferred before maturity to the plaintiff in the action. It further appeared that Whitely was the president and manager of the Champion Machine Company, and that the note in fact belonged to that company.   Upon these facts, the Supreme Court of Kansas held it would presume that Whitely, as president and general manager of the Champion Company, was authorized to discount and transfer the note in the due course of business.   Merchants' Bank v. Citizens' Gaslight Co., 159 Mass. 505, 34 N. E. 1083, 38 Am. St. Rep. 453;   American Exchange National Bank v. Oregon Pottery Co. (C C.) 55 Fed. 265;  Crowley v. Mining Co., 55 Cal, 273;  Caryl v. McElrath, 3 Sandf. 176.

In the case at bar it is further contended by the defendants that the teller of the bank was not authorized to discount the note in suit by virtue of his position as teller, and therefore the acceptance of the note in suit, and discounting of the same by him, and placing the proceeds of the same to the credit of the Janney Manufacturing Company, was not such an acceptance of the note as would prevent the defendants from proving their defense to the same. We are of the opinion, however, that the transaction on the part of the teller was such as he was authorized to make under the custom and business of the bank.

It appeared from the evidence that he was accustomed to accept and place to the credit of parties negotiable notes of such parties as it did business with and were regarded as good, and it further appeared in evidence that the plaintiff bank did a very large business with the Janney Manufacturing Company, in the way of discounting its notes, and that these transactions were often made by the teller in the absence of the cashier, and were recognized and approved by the officers of the bank.

This brings us to the next and more important question, namely, was the bank, through its officers, charged with the notice of the defendants' defense to the action? It was shown that the president and cashier of the bank had no actual knowledge that there was any defense to the note, and the question is, can they be held to have constructive notice by virtue of their connection with the Janney Manufacturing Company as its treasurer and secretary? We are of the opinion that to hold that they had such constructive notice would be carrying the principles of constructive notice too far, in order to defeat negotiable paper held by a corporation whose officers hold stock

in and of which they are officers.    The Janney Manufacturing Company had its place of business in Iowa.    The transaction culminating in the note in suit was had with the appellants at Sioux Falls.    The possession of a negotiable instrument payable to order and properly indorsed is prima facie evidence that the holder is the owner thereof, and that he acquired the same in good faith, for value, in the course of business, before maturity, without notice of any circumstances that would impeach its validity, and that he is entitled to its full face value as against any of the parties, except where the note was obtained by fraud, in which case a different rule applies.    Section 4487 Comp. Laws 1887; Manufacturers' National Bank v. Newell, 71 Wis. 309, 37 N. W. 420; First National Bank of Rock Island v. Loyhed, 28 Minn. 396, 10 N. W. 421; Ft. Dearborn National Bank v. Seymour, 71 Minn. 81, 73 N. W. 724; Benton v. German National Bank (Mo.) 26 S. W. 975; Memphis National Bank v. Sneed (Tenn.) 36 S. W. 716, 34 L. R. A. 274, 56 Am. St. Rep. 788; Wilson v. Second National Bank (Pa.) 7 Atl. 145; Casco National Bank v. Clark (N. Y.) 34 N. E. 998, 36 Am. St. Rep. 705. In Manufacturers' National Bank v. Newell, supra, the supreme court of Wisconsin says: "The acts of the agent in selling the machine and taking the note were, in legal effect, the acts of the company.    This being so, the company must be presumed to have had constructive notice of the infirmity of the note in question.    But it does not appear that, prior to its receipt of the note, any of the directors or officers of the bank had any actual knowledge or information respecting such infirmity.    The mere fact that some of the directors and officers of the bank were also directors and officers of the company did not import to the bank the same constructive notice as was

.chargeable against the company." In the case of First National Bank of Rock Island v. Loyhed, supra, the supreme court of Minnesota says: "Lastly, the defendant contends that the court erred in directing a verdict for plaintiff, because the evidence showed that it was chargeable with notice of defendant's equities against the note when it was discounted. The evidence is uncontradicted that the bank became the purchaser and indorsee of the note before maturity and in the regular course of business, for a valuable consideration; that the business was transacted on the part of the bank by its cashier, J. M. Buford, who had never seen nor heard of the note until it was presented at the bank for discount, and had no actual notice of any defense or equities on the part of the defendant. But defendant insists that because J. M. Buford was a stockholder and director of the B. D. Buford & Co., corporation, therefore he was chargeable with notice, and that notice to him was notice to the bank. It appears also, that said J. M. Buford had no duties to perform in reference to this note, either as a stockholder or director of B. D. Buford & Co." But the court held that the bank was protected. In the case at bar no illegality in the original inception of the note was shown or claimed. In the Mann case, supra, this same question was considered; and the court, in the course of the opinion, says: "The claim, then, of the defendants, in the light of the facts of the case, is as follows: * * * In other words, the bank must be held to have had constructive notice of the infirmity of the note, not because it or any of its officers or agents had actual notice thereof, or actual notice of any fact which might put them upon inquiry, but because one of its .officers was a member of another corporation, which had

an agent who had actual notice of such infirmity. We think this is carrying the doctrine of constructive notice too far. We think a corporation should be held to have constructive notice of only such facts as have been brought to the actual notice or attention of some one of its officers or agents, or of such facts only as have been constructively brought to the notice or attention of some one of its officers or agents, by the actual notice of such other facts as would naturally put the officer or agent upon inquiry. Why should a corporation be required to take notice of matters or things concerning which not one of its officers or agents has any actual notice? How could its officers communicate to the corporation notice of matters or things of which they themselves have no actual notice? And how, in the present case, could Whitely have communicated to his bank the fact of the infirmity of the note in suit, when he did not possess the slightest actual knowledge or notice that such infirmity existed?" The views expressed by these courts meet with our approval.

It is further contended by the appellants that the plaintiff is not in the position of an indorsee of negotiable paper before maturity, for the reason that it advanced no money to the Janney Manufacturing Company at the time of the transfer of the note or at any time, and the giving the Janney Manufacturing Company credit for the amount of the note did not place it in a position to defeat the defendant's right to make their defense to the action. It seems to be well settled that the transfer of a negotiable promissory note before maturity in the payment of a pre-existing debt is of itself sufficiently valuable consideration to constitute a transferee a bona fide holder, and to entitle him to protection as against infirmities in the paper of which

he had no notice.   4 Am. & Eng. Euc. Law (2d Ed.) 285; Swift
v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Hanold v. Kays, 64 Mich.
439, 31 N. W. 420, 8 Am. St. Rep. 835; Outhwite v. Porter, 13
Mich 533; Mann v. Second National Bank, supra; Naglee v.
Lyman; 14 Cal. 451: Rosemond v. Graham, 54 Minn. 323, 56 N.
W. 38, 40 Am. St. Rep. 336; Mayer v. Heidelbach, 123 N. Y.
332, 25 N. E. 416, 9 L. R. A. 850; Cerlisle v. Wishart, 11 Ohio
173, 192, Barker v. Lichtenberger, 41 Neb. 751, 60 N. W. 79; R.
Co, v. National Bank, 102 U. S. 74: 26 L. Ed. 61.   In the latter
case the Supreme Court of the United States, in considering
this question, after commenting at some length on the case of
Swift v. Tyson, supra, says:   "According to the very general
concurrence of judicial authority in this country, as well as
elsewhere, it may be regarded as settled in commercial juris-
prudence—there being no statutory regulations to the contrary
—that, where negotiable paper is received in payment of an
antecedent debt,   *   *   *   the holder who takes the trans-
ferred paper before its maturity, and without notice, actual or
otherwise, of any defense thereto, is held to have received it in
due course of business, and, in the sense of commercial law,
becomes a holder for value, entitled to enforce payment, with-
out regard to any equity or defense which exists between prior
parties to such paper.   Upon these propositions there seems
at this day to be no substantial conflict or authority."   Upon
questions of commercial law, it is desirable that the decisions
of the state and federal courts should, as far as possible, be in
harmony; and in a new state like our own, where the question
we are considering has not as yet been settled by judicial de-
cision, it is proper that the view of the United States Supreme
Court should be followed.

It clearly appearing in the case at bar that the plaintiff received credit by the bank on its indebtedness to the value of the note, the plaintiff must be considered as an indorsee for value, without notice, and entitled to recover the amount due upon the note, without regard to any defense that may exist in favor of the defendants as against the Janney Manufacturing Company.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.